**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

**JOSEPH CARPENTIER,**

    **Plaintiff,**

**v.**

**ALLIANCE FOR SUSTAINABLE ENERGY, LLC**

    **Defendant.**

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff Joseph Carpentier ("Carpentier" or "Plaintiff") states the following Complaint against Defendant Alliance for Sustainable Energy, LLC ("Defendant").

**NATURE OF ACTION**

Carpentier brings this action for damages as a result of Defendant's discrimination against him on the basis of his disability, his perceived disability, and as a result of its retaliation against him in violation of the Americans with Disabilities Act of 1990, Pub. L. No. 101-336, 104 Stat. 328 (1990) ("ADA").  Carpentier was harassed, denied a meaningful discussion on accommodations for his disability, retaliated against for having participated in a protected activity, and discharged because of his disability and his perceived disability.

## PARTIES

1. At all times relevant herein, Carpentier was a male citizen of the State of Colorado and a member of a protected class of individuals recognized under the ADA.

2. Defendant is a Colorado Limited Liability Company. It is an "employer" as defined in 42 U.S.C. § 12111.

3. Defendant is comprised of over one hundred employees.

4. Carpentier was employed by Defendant during all relevant time periods.

## JURISDICTION

5. Jurisdiction is invoked pursuant to the American with Disabilities Act of 1990, Pub. L. No. 101-336, 104 Stat. 328 (1990).

## ADMINISTRATIVE PROCEDURES

6. Carpentier has timely and properly exhausted his administrative remedies by filing an initial Charge with the Equal Employment Opportunity Commission ("EEOC") on or about April 24, 2015, based upon grounds of disability discrimination and retaliation.

7. This lawsuit is timely filed within 90 days after Carpentier's receipt of a Notice of Right to Sue from the EEOC dated July 15, 2016.

## FACTUAL ALLEGATIONS

8. Defendant hired Carpentier on or around December 2012, as a Computer Specialist III.

9. At all relevant times Carpentier was obese and was prone to sweating.

10. On or around August 8, 2014, Carpentier began to have an anxiety attack while at work. On break he went outside to the parking lot.

11. While Carpentier was in the parking lot one of Defendant's security personnel saw Carpentier and requested he be given medical attention.

12. Carpentier told the security personnel that he knew he had anxiety and that he, Carpentier, could handle it without medical attention. The security guard disregarded Carpentier's statements and called Emergency Medical Services ("EMS").

13. EMS issued the "all clear" on Carpentier and Carpentier returned to work.

14. Defendant was aware Carpentier suffered from anxiety.

15. Defendant did not have any meaningful discussions with Carpentier about his disability and reasonable accommodations.

16. On or about October 31, 2014, EMS was again requested for Carpentier. Carpentier was suffering from chest pain. An "all clear" was issued and Carpentier returned to work.

17. On or about November 5, 2014, Carpentier was sitting with other staff members, and had been at work for at least two hours, when a security guard came into the office and stated he was looking for someone in distress. Carpentier and the security personnel walked around the office looking for the "distressed" employee. The security told Carpentier what cubicle number he was looking for and it turned out to be Carpentier's cubicle. The security personnel was stunned that Carpentier was the person allegedly in distress. The ambulance that arrived was determined to be a "clerical mistake."

18. The security personnel stated in that report that he "found a male sitting in no apparent distress and with facility staff." Carpentier denied any medical or traumatic complaints.

19. However, on November 5, 2014, Defendant told Carpentier to go home and told him that he was not allowed to come back to work until he received a doctor's note stating that he could return to work.

20. At this time Defendant had no policy that allowed them to ask for a fitness for duty exam.

21. On or about November 7, 2014, Defendant emailed Carpentier and told him that Defendant needed to speak to him "immediately." Defendant requested that Carpentier sign a full release of all of his medical records.

22. Defendant refused to allow Defendant to return to work requiring Carpentier to miss three consecutive days of work. The three days missed work allowed Defendant to require a fit for duty exam under its policies.

23. On or about November 10, 2014, Carpentier emailed Defendant and asked what was going on because he was not allowed back to work and was not provided any explanation. Carpentier was told that in order for Defendant to tell him anything Carpentier would have to waive all of his HIPAA rights and see a psychiatrist. Carpentier told Defendant that he was being harassed and that "this is retaliatory."

24. On or about November 10, 2014, Defendant told Carpentier that he was required to attend a fitness for duty exam prior to returning to work.

25. On or about November 11, 2014, Carpentier completed the fitness for duty exam. Carpentier was found to be "Fit for Duty with Considerations."

26. On or about November 19, 2014, Carpentier emailed Deb McCoy in Human Resources and told her that it had been eight (8) days since his exam and three (3) days since McCoy was informed that Carpentier could return to work.

27. McCoy responded to the November 19, 2014, email and claimed that she had not yet received the exam results and should have "more definitive" news from that. McCoy confirmed that Carpentier was cleared to return to work but she refused to let him return.

28. On or about December 3, 2014, over three weeks after Carpentier completed the fit for duty exam, Defendant finally contacted Carpentier and told Carpentier that he was not allowed to return to work until he underwent a complete physical evaluation and a complete cardiac evaluation. The outcome of the evaluations had to be sent to Defendant and had several stipulations about what was required to be in those evaluations. The deadline for Carpentier to submit the evaluations was December 17, 2014, just two weeks after he was notified by Defendant.

29. The December 3, 2014 letter from Defendant did not state that Carpentier would be allowed to return to work upon his completion of a complete physical and cardiac examination. The letter stated that the "behavioral requirements for the positions will be discussed once you are determined to be cleared to return to work."

30. Upon information and belief an individual has to be referred by the primary care physician to a cardiologist for insurance purposes. Carpentier was unable to just call up a cardiologist and schedule an appointment.

31. On or about December 16, 2014, Carpentier learned that McCoy called his PCP and told the PCP what she believed Carpentier's medical condition was so that Carpentier would not be allowed to return to work. This is against Carpentier's right to privacy and against HIPAA.

32. Carpentier was unable to get an appointment with a cardiologist by December 17, 2014.

33. On December 17, 2014, Carpentier notified Defendant and told them had not been able to see a cardiologist yet.

34. On December 18, 2014, Defendant stated that Carpentier had three days, to submit the evaluations from his primary care physician and cardiologist or Defendant would find his absence to be unauthorized and a cause for termination.

35. On December 23, 2014, Carpentier submitted his "Return to Work" clearance from his primary care physician. Carpentier had not been able to see the cardiologist yet because cardiologist appointments are scheduled four weeks out or more.

36. Carpentier was not allowed to return to work because Defendant refused to allow him to return regardless of the fact that two separate doctors cleared him and stated he was able to perform his job.

37. On December 29, 2014, Carpentier was terminated for "being absent without authorization and job abandonment."

38. Defendant's reasons for Carpentier's termination were pretextual.

## FIRST CLAIM FOR RELIEF
### (Disability Discrimination-ADAAA)

39. The preceding allegations are incorporated by reference as if fully stated herein.

40. Defendant is an employer as that term is defined under the ADA and the ADAAA.

41. Carpentier has a qualifying disability under the ADA.

42. Defendant was aware as of October 8, 2014, that Carpentier suffered from a qualifying disability.

43. Defendant failed to have any meaningful discussion about accommodations with Carpentier regarding Carpentier's disability.

44. Defendant knowingly and willfully subjected Carpentier to disability discrimination.

45. Defendant knew its actions violated Title VII, the ADA or the ADAAA or it was recklessly indifferent in that regard.

46. As a direct and proximate result of the foregoing actions of Defendant, Carpentier suffered and will continue to suffer damages, including but not limited to loss of front pay and back wages, earnings, benefits, insurance premiums, health care costs, diminution of future earning capacity, non-economic damages such as, but not limited

to, mental anguish, inconvenience, attorney fees, costs and expenses, and other damages to be determined at trial.

## SECOND CLAIM FOR RELIEF
### (Disability Discrimination-ADA § 12112)

47. The preceding allegations are incorporated by reference as if fully stated herein.

48. Defendant is an employer as that term is defined under the ADA.

49. Defendant perceived Carpentier as having a qualifying disability.

50. Defendant believed that because Carpentier is morbidly obese that he was unable to perform functions of the Computer Specialist III position.

51. Defendant believed that because Carpentier may have suffered from a heart condition that he was unable to perform the functions of the Computer Specialist III position.

52. Defendant harassed Carpentier because of his morbid obesity.

53. Defendant harassed Carpentier because of his heart condition.

54. Defendant willfully and intentionally subjected Carpentier to disability discrimination.

55. Defendant knew its action violated the ADA or was recklessly indifferent in that regard.

56. Defendant failed to provide a temporary accommodation for Carpentier because of his perceived disability.

57. As a direct and proximate result of the foregoing actions and conduct of Defendant, Carpentier has suffered, and will continue to suffer, damages including but

not limited to loss of front and back wages, earnings, benefits, insurance premiums, health care costs, diminution of future earning capacity, non-economic damages such as, but not limited to, mental anguish, inconvenience, attorney fees, costs and expenses, and other damages to be determined at trial.  Carpentier claims compensatory damages for all losses and injuries under § 102 of the Civil Rights Act of 1991, 42 U.S.C §1981a.

### THIRD CLAIM FOR RELIEF
### (Retaliation-ADA § 12203)

58. The preceding allegations are incorporated by reference as if fully stated herein.

59. Defendant's conduct in subjecting Carpentier to the above-described adverse employment actions are in violation of the ADA § 12112.

60. The effect of these statutory violations was to deprive Carpentier of rights and privileges enjoyed by persons who have not engaged in activities protected by the ADA and/or ADAAA.

61. These statutory violations were intentional.

62. These statutory violations were willful and wanton, and/or were done with malice or with reckless indifference to Carpentier's federally protected rights.

63. As a result of the actions of Defendant, Carpentier suffered damages.

WHEREFORE, Joseph Carpentier respectfully requests that this Court enter judgment in his favor and against Defendant, and award him damages for back pay, front pay and benefits, personal humiliation, severe emotional pain, inconvenience, mental anguish, future pecuniary loss and loss of enjoyment of life, punitive damages,

liquidated damages, penalties, costs, interest and expert fees, attorney's fees, and such other and further relief as this Court deems proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Dated this 10th day of October, 2016.

                            BACHUS & SCHANKER, LLC

                            */s/ Sara A. Green*
                            Sara A. Green
                            1899 Wynkoop Street, Suite 700
                            Denver, CO 80202
                            Telephone:   303-893-9800
                            Facsimile:    303-893-9900
                            sara.green@coloradolaw.net